**SO ORDERED**



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| In Re: | |
|---|---|
| Maria L. Mejia | Case No.      12-12090-TJC |
| Debtor | Chapter         7 |
| Maria L. Mejia | |
| Plaintiff | Docket No.         21 |
| vs. | Jointly Administered with |
| Partners for Payment Relief LLC, *et al.* | Adversary No.      13-00501 |
| Defendants | |

**MEMORANDUM AND ORDER**

Debtor Maria L. Mejia (the "Debtor") brought a motion for contempt against Partners for Payment Relief DE III LLC ("PPR"), among others, seeking damages for violation of the discharge injunction and a temporary restraining order enjoining them from committing further violations. Docket No. 21. The Debtor alleged that PPR engaged in a scheme to coerce repayment of her valueless, underwater discharged second deed of trust loan by acquiring the note for pennies, foreclosing on her home and then requiring repayment of the loan so the Debtor could stay in her home. The Debtor also contended that PPR had no intention of benefiting from

its *in rem* rights because those rights had no economic value. After a preliminary hearing, the court granted a temporary restraining order. Docket No. 33. PPR then agreed to transfer back to the Debtor the real property that was the subject of the deed of trust loan, thus resolving the need for any further injunctive relief.

Now before the court is PPR's response to the motion for contempt. Docket No. 50. No discovery has been taken and no evidentiary hearing has yet been held. PPR argues that the court should not allow discovery to go forward and should dismiss the request for contempt sanctions on the following two grounds: (1) the Debtor failed to allege facts sufficient to state a claim for contempt for a violation of the discharge injunction; and (2) now that the Debtor has received the property from PPR she is not entitled to recover emotional distress damages or punitive damages for a violation of the discharge injunction, and she is barred from recovering attorney's fees because she is represented pro bono.

The court concludes that the Debtor has stated a claim for contempt for violation of the discharge injunction. The court also determines that the Debtor is not entitled to emotional distress damages for a violation of the discharge injunction but, on the record currently before the court, she would not be barred from recovering punitive damages or attorney's fees upon a proper showing.

**Facts As Alleged by the Debtor**

The Debtor is an El Salvadorian immigrant who is a lawful resident of the United States. She works as a housekeeper. The Debtor has limited ability to speak English and has no meaningful ability to read or write in English.

In September 2005, the Debtor purchased a home at 262 W. Deer Park Road, Gaithersburg, Maryland, for $284,000. The Debtor had accumulated $28,000 in savings that she

put toward the purchase price and roughly $13,000 in closing costs. She financed the remainder of the sale price through two "sub-prime" deed of trust loans – a first deed of trust loan with Countrywide Home Loans and a second deed of trust loan with Intervale Mortgage Corporation ("Intervale") in the amount of $49,650.

The Debtor's income fell substantially during the recession that began in 2008 because many of her clients could not afford housekeeping services. Thus, the Debtor was unable to make payments on the two loans. At the same time, the value of her home had fallen by thirty percent or more, which she purchased at the height of the market.

On February 8, 2012, the Debtor filed the captioned petition under Chapter 7. On Schedule D, she listed her residence as having a value of $183,600 subject to a deed of trust held by BAC Home Loans Servicing LP for $281,254, and a deed of trust held by PPR for $48,912. Docket No.1. Under the column "unsecured portion, if any," the Debtor listed the entire debt to PPR as "unsecured."

On May 16, 2012, the court issued an order granting the Debtor a discharge under 11 U.S.C. §727. Docket No. 18.

On December 19, 2012, PPR filed a Notice of Foreclosure Action in the Circuit Court for Montgomery County, Maryland. Although the Debtor does not challenge the foreclosure here, she alleges that there were numerous deficiencies and improprieties throughout the process of PPR's foreclosure. She points to these deficiencies as indications that PPR, among other things, did not want any other bidder at the foreclosure sale because a successful bidder would wipe out PPR's lien and thwart its plan to collect the debt from the Debtor personally. Specifically, based on the allegations in the Contempt Motion, the Debtor alleges that the purported auction was a sham because it was the only way that PPR could recover anything based on the value of the

Property. It was designed to allow PPR to take legal ownership of the Property so that it could threaten to evict the Debtor in an effort to coerce her into paying the debt personally.

The Contempt Motion further alleges that on February 11, 2013, PPR sent the Debtor a letter giving notice of a foreclosure sale of the Debtor's residence by public auction on February 27, 2013. At the bottom of the letter, it stated in bold type:

> **PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The foreclosure sale occurred on February 27, 2013. No one appeared to bid on the Property and PPR was the successful credit-bidder. PPR obtained an order ratifying the sale on April 22, 2013, and on May 6, 2013, PPR filed a motion asking the state court to award possession of the property to PPR. The court issued an order of judgment of possession in favor of PPR on June 24, 2013, and on July 3, 2013, PPR obtained a writ of possession, which was issued and delivered to the county sheriff on July 8, 2013.

Following receipt of the notice of eviction, the Debtor contacted PPR in an effort to understand what had transpired, and she was told that the eviction would not occur until August 22, 2013. A representative of PPR who identified herself as a "workout specialist" then sent the Debtor a hand-written note on PPR letterhead dated July 25, 2013, stating that she "had received a call from a third party who stated that you were interested in staying in your home and working something out regarding your second mortgage." Docket No. 21-4 at 2.

In response to this letter, the Debtor called PPR who agreed to have a Spanish-speaking representative call the Debtor to explain the situation. That representative, identified only as "Patricia," called on behalf of PPR and explained in Spanish that PPR would cease its efforts to evict her if the Debtor would agree to pay $3,000 to PPR immediately and $471.25 per month

4

over thirty years.  When the Debtor said that she wanted to consult with an attorney, Patricia discouraged her from hiring a lawyer on the ground that the Debtor would need the money to pay PPR and that the Debtor could instead negotiate directly with PPR.

On or about August 1, 2013, the Debtor received via U.S. Priority Mail a four-page agreement (the "Agreement") that obligated her to pay the discharged debt personally.  While PPR was aware that the Debtor did not speak English fluently, the Agreement was entirely in English except for a "post-it note," handwritten in Spanish, that asked the Debtor to sign the Agreement, have it notarized and return it to PPR with a copy of her driver's license.  The Agreement provides that "under the limited circumstances contained herein PPR has agreed to change the term of the [Intervale] note."  Docket No. 21-4 at 4-8.  The terms under which PPR agreed to change the note included a requirement that the Debtor would pay PPR the sum of $78,600, purportedly representing the original amount of the second mortgage with Intervale plus accrued interest, plus interest at the rate of six percent, with a payment of $3,000 due immediately and $471.25 per month due for thirty years.  *Id*. at 6.

The Agreement provided that if the Debtor failed to make a monthly payment under the revised note, PPR could "enforce any and all other rights then existing under the terms of the Note or Security Deed."  *Id*.  The Agreement also provided that if the Debtor made payments for eighteen months PPR would re-convey title to her.  *Id.* at 7.  It was written in such a manner, however, that if the Debtor made even one late payment PPR would have no obligation to re-convey title even if the Debtor ultimately paid everything due under the Agreement.

Finally, although the Debtor no longer owned the Property, the Agreement obligated the Debtor to keep the first deed of trust loan current, and to pay property taxes and insurance.  *Id.*  It expressly stated, however, that the Agreement was "not intended to create any form of Landlord-

5

Tenant relationship . . . under applicable law." *Id.*

## Procedural History

The Debtor filed her chapter 7 case on February 8, 2012. After the chapter 7 trustee issued a report of no distribution, the court entered an order discharging the Debtor on May 16, 2012, and the clerk closed the days later.

On August 20, 2013, the Debtor filed her motion to reopen the case and for contempt sanctions for violating the discharge injunction of §524(a) (the "Contempt Motion").[1] In addition to PPR, the Debtor named an affiliated entity, Partners for Payment Relief, and David Van Horn in the Contempt Motion. The Contempt Motion was accompanied by twenty-seven exhibits and a declaration of counsel. The Debtor also filed an emergency motion for a temporary restraining order, seeking to enjoin the defendants from evicting her from the property or otherwise seeking to collect on the debt.

When the Debtor filed her Contempt Motion and motion for a temporary restraining order, the clerk's office issued a notice of deficiency, which is routinely issued when a party seeks injunctive relief without filing an adversary proceeding in light of Fed. R. Bank. P. 7001(7). The Debtor cited considerable authority that an adversary proceeding is not required when seeking an injunction to enforce the discharge injunction but, as she stated, out of an abundance of caution and to eliminate any potential dispute over procedural deficiencies, she filed a complaint against the same three parties initiating adversary proceeding no. 13-501 (the "Adversary Proceeding"). The complaint raises the same claims as those in the Contempt Motion. The Contempt Motion and the Adversary Proceeding have been administratively consolidated.

---

[1] On August 22, 2013, the court entered an order reopening the case to allow the Debtor to pursue her request for sanctions without prejudice to PPR's and the other named parties' rights to challenge her request.

On September 27, 2013, PPR filed an answer in the Adversary Proceeding. Defendants Partners for Payment Relief and David Van Horn filed motions to dismiss the complaint contending they did not own the note and are not liable even if the Debtor states a claim against PPR. That motion was granted without prejudice on November 20, 2013, and the court gave the Debtor twenty-one days to file an amended complaint against Partners for Payment Relief and David Van Horn.

The court held a hearing on the Contempt Motion and on PPR's response to the Contempt Motion on November 21, 2013.

## Analysis

*Debtor's Claim for Contempt for Violation of the Discharge Injunction.*

PPR's current position with respect to the Debtor's claim for contempt is not altogether clear. It denies it violated the discharge injunction and that the Debtor is entitled to any relief, but it asks the court to dismiss the Contempt Motion without providing the Debtor with an opportunity for discovery or an evidentiary hearing. The matter is somewhat muddled further by the procedural posture it currently is in. PPR answered the Debtor's complaint in the Adversary Proceeding. Yet, the current argument PPR makes in response to the Contempt Motion is in the nature of a Fed. R. Civ. P. 12(b) or 12(c) motion, applicable here by Fed. R. Bankr. P. 7012, which would have been more appropriately filed in the Adversary Proceeding. Under the Fed. R. of Bankr. P., a Rule 12 motion is not available in a contested matter. Fed. R. Bank. P. 9014.

In any event, if the court were to apply the plausibility standard of Fed. R. Civ. P. 12(b)(6)[2] to PPR's response, it would not dismiss the Contempt Motion at this time. Section

---

[2] Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint is legally sufficient if it states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff

7

524(a) provides that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. §524(a). While §524(a) does not expressly provide a remedy for a violation of the statutory injunction, the federal courts have uniformly held that bankruptcy courts have authority under §105(a) to enforce §524(a) through contempt proceedings. *In re Paul*, 534 F.3d 1303, 1306 (10th Cir. 2008); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506–07 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997); *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996).

The Debtor argues that the evidence will establish beyond dispute that PPR willfully violated the discharge injunction by attempting to collect the debt personally from the Debtor. According to the Debtor, despite direct knowledge of the discharge order, PPR attempted to collect the debt personally from the Debtor for more than a year, culminating with the Agreement that PPR sent after it had fully exercised its rights *in rem:*

- There was no legitimate business or financial reason for PPR to foreclose on the Debtor's home because it knew that the market value of the home was far below the amount due on the first deed of trust loan. PPR did so in order to coerce the Debtor into repaying the loan. PPR's actions are part of PPR's business plan to coerce debtors to pay personally worthless "secured" loans that have previously been discharged.
- PPR's workout specialist admitted that she "made numerous attempts on behalf of [PPR] to go over borrower's options to satisfy this debt," during the period before the bankruptcy case until ten months after the discharge.
- PPR initiated foreclosure proceedings in December 2012 because, in the words of PPR's principal "[s]ometimes it just takes the reality of a foreclosure notice to get someone to engage with one of our workout specialists."
- PPR sent the Debtor a letter on February 11, 2013, informing her that PPR has scheduled a foreclosure sale on February 27, 2013, which stated in bold type:

---

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).

- "PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."
- PPR gave the Debtor six weeks until the eviction, evidencing that PPR had no desire or intention to take possession of the Property.
- PPR workout specialist sent the Debtor a letter on July 25, 2013 (well after the foreclosure sale was ratified), offering to assist the Debtor in "working something out regarding your second mortgage" so the Debtor could "stay[] in your home."
- PPR signed the Agreement that purported to resolve the Debtor's delinquent loan to the Debtor, and that document was sent to her with a post-it note asking her to sign and return it to PPR.
- The Agreement obligated the Debtor to repay all amounts due on the loan, and allowed PPR to exercise its rights and remedies on the note and deed of trust.
- Once the foreclosure sale of the Property was completed, PPR had no further rights *in rem.* Everything done after that point was, by definition, an attempt to collect payment from the Debtor personally.

PPR argues that it was merely exercising its *in rem* rights, which does not violate the discharge injunction. However, "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." *In re Pratt*, 462 F.3d 14, 19-20 (1st Cir. 2006). "Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis à vis a discharged debtor, a violation of §524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly i.e., so as to obtain payment of the discharged debt." *In re Paul,* 534 F.3d 1303, 1308 (10th Cir. 2008). "[A] creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt." *In re Kuehn,* 563 F.3d 289, 292 (7th Cir. 2009). "An action is coercive where it is 'tantamount to a threat,' of places the debtor 'between a rock and hard place' in which he would lose either way." *In re Lumb*, 401 B.R. 6-7 (B.A.P. 1st 2009) (quoting *Jamo v. Katahdin Fed. Credit Union* , 283 F.3d

9

392, 402 (1st Cir. 2002)); *Diamond v. Premier Capital, Inc.*, 346 F.3d 224, 227-28 (1st Cir. 2003).

Here, the Debtor has made detailed and specific allegations that PPR's *in rem* rights were worthless and its sole purpose for foreclosing on the Property was to coerce the Debtor into paying the discharged note. Given these allegations, the court will not dismiss the Contempt Motion under the plausibility standard of Rule 12(b).

### *Section 524(j) Provides No Defense to PPR on this Record.*

At the hearing on the motion, PPR raised for the first time that §524(j) establishes that its actions do not violate the discharge injunction. PPR cites no authority in support of its position, and simply relies on the language of the section.[3]

Under the facts as alleged by the Debtor, none of the subsections of §524(j) apply. For example, given the timing of PPR's acquisition of the note and the little contact that occurred between the parties, it is questionable whether there even was an "ordinary course of business" between the Debtor and PPR as required by §524(j)(2). Moreover, there is nothing in the Debtor's allegations (or the uncontroverted facts) that could lead the court to conclude that PPR's offer to allow the Debtor to stay in the Property she no longer owned by repaying the discharged debt was in the ordinary course of business between PPR and the Debtor.

PPR's reliance on §524(j) also fails under §524(j)(3). As alleged by the Debtor, at the time PPR offered to allow the Debtor to remain in the Property in exchange for reaffirming the note, the lien had been extinguished by the foreclosure. Therefore, as alleged by the Debtor,

---

[3] Section §524(j) states:
(j) Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if--
    (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
    (2) such act is in the ordinary course of business between the creditor and the debtor; and
    (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

PPR's efforts were not "in lieu of pursuit of in rem relief *to enforce the lien*" as required by §524(j)(3). *See* §524(j)(3) (emphasis added).

***Emotional Distress Damages are Not Available.***

The parties dispute whether a bankruptcy court can award emotional distress damages for a violation of the discharge injunction. Essentially, they take differing views of the decision by the Fourth Circuit in *Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir. 1989). In *Walters*, the Court of Appeals relied on §105 to conclude that bankruptcy courts have contempt power. *Id*. at 669. However, the Fourth Circuit determined that an award for emotional distress damages is not an available remedy for contempt. *Id.* at 670.

The Debtor argues that *Walters* is not controlling for several reasons. Initially, she argues that *Walters* addressed contempt of an attorney who disobeyed a court order and that there is a significant difference between that kind of contempt and the contempt at stake here – for violating a Congressional enactment designed to protect the very benefits a debtor obtained through the bankruptcy process. But *Walters* stands as the seminal case in the Fourth Circuit on the scope of a bankruptcy court's civil contempt power. Every lower court of which this court is aware in the Fourth Circuit that has addressed the issue has applied *Walters* to prohibit emotional distress damages for contempt, including contempt for violating the discharge injunction. *See In re Collins*, 2013 WL 593708, *3 (Bankr. E.D.N.C. Feb. 14, 2013); *In re Malone*, 2012 WL 162374, *7 (Bankr. W.D.N.C. 2012); *In The Original Barefoot Floors of America, Inc.*, 412 B.R 769, 776 (Bankr. E.D. Va. 2008); *In re Workman*, 392 B.R. 189, 195 (Bankr. D.S.C. 2007); *In re Bock*, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2002); *In re Cherry,* 247 B.R. 176, n.21 (Bankr. E.D. Va. 2000).

11

In *Walters*, the court determined that §105 provides bankruptcy courts with the authority to issue civil contempt. 868 F.2d at 669. As the court said, "[w]e see no reason to read into [the language of §105] anything other than its plain language that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code." *Id*. Thus, the court's ruling would seem to apply to any bankruptcy court contempt order issued pursuant to §105 to carry out the "provisions of the bankruptcy code." *Id.* As Debtor recognizes, a bankruptcy court's issuance of contempt for violations of the discharge injunction also is grounded in §105. *See* Docket No. 21 at 20. Accordingly, the Debtor's attempt to distinguish the contempt found in *Walters* from contempt for violating the discharge injunction is unavailing.

The Debtor also argues that the court's basis for denying emotional distress damages was that "no authority [was] offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and [the court knew] of none." 868 F.2d at 670. The Debtor points out that in the twenty-four years since *Walters*, a number of courts outside the Fourth Circuit have held that emotional distress damages are available for a violation of the discharge injunction. *See e.g*., Docket No. 21 at 30-31. While the Debtor is correct on this point, because the court has determined that *Walters* applies to contempt for violation of the discharge injunction, the Debtor must make this argument to the Fourth Circuit or the district court, not here.

### *It is Premature to Determine Whether Punitive Damages are Available.*

PPR does not dispute that the bankruptcy court may award punitive damages for a violation of the discharge injunction. Courts too numerous to mention have so held. *See e.g.*, *In re Dotson*, 2013 WL 5652732, *5 (Bankr. W.D. Va. Oct. 16, 2013); *In re Mead,* 2012 WL

627699, *5 (Bankr. E.D.N.C. 2012); *In re Malone,* 2012 WL 162374 at *7; *In re Pague,* 2010 WL 1416120, *9 (Bankr. N.D.W. Va. Apr. 5, 2010); *In re Workman,* 392 B.R. at 195 (Bankr. D.S.C. 2007); *In re Evans,* 289 B.R. 813, 827 (Bankr. E.D.Va. 2002); *In re Bock,* 297 B.R. at 28-29; *In re Cherry*, 247 B.R. at 187; *In re Mickens,* 229 B.R. 114, 119 (Bankr. W.D.Va. 1999); *In re Brantley*, 116 B.R. 443, 449-450 (Bankr. D. Md. 1990); *In re Barbour*, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987).

PPR argues that punitive damages are not available under the facts of this case. It alleges that the Debtor concedes that PPR's *in rem* rights survived the discharge, and it was simply exercising its *in rem* right to foreclose on the note. In this regard, PPR's argument is little more that a restatement that the Debtor has not alleged a violation of the discharge injunction, addressed above. In light if the Debtor's many and detailed allegations that PPR intended to coerce the Debtor into paying the discharged debt, and that such coercion was part of PPR's business plan, PPR's argument that punitive damages are not available is premature.

***Attorney's Fees May Be Awarded to Pro Bono Counsel.***

PPR does not dispute that attorney's fees may be awarded as a component of damages for contempt. It alleges, however, that because the Debtor's law firm has agreed that it would not require the Debtor to pay the fees, attorney's fees may not be awarded in this case. PPR does not cite any authority for this proposition, and relies on the proposition that because the Debtor is not required to pay the fees, she will incur no damages for attorney's fees.

PPR's position is contrary to established law. The Supreme Court has recognized the award of attorney's fees to pro bono counsel:

> [I]t is not legally relevant that plaintiffs' counsel . . . are employed by . . . a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorney's fees to

13

>be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees.

*Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984). The Fourth Circuit stated in *Brinn v. Tidewater Transp. Dist. Comm'n,* 242 F.3d 227 (4th Cir. 2001) that "courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases received public funding." *Id.* at 234-235 (citing *Blum,* 465 U.S. at 893-95); s*ee also*, *Venegas v. Mitchell*, 495 U.S. 82, 87-88, 110 S.Ct. 1679 (1990) (because it is a party, not the lawyer, who is entitled to an award of fees the Court has consistently held that fees should be awarded even where services of counsel were provided free of charge). Therefore, counsel's representation of the Debtor on a pro bono basis is not a bar to an award of attorney's fees.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

ORDERED, that the Debtor's claim for emotional distress damages is dismissed, and it is further

ORDERED, that PPR's request to dismiss the Contempt Motion is otherwise denied.

cc:   All parties
      All counsel

**END OF MEMORANDUM AND ORDER**